**FILED**

**MAY 3 1 2006**

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 06-90 |
| v. | : | |
| ANDREW L. CARR, | : | VIOLATION: 18 U.S.C. § 641 |
| | : | (Embezzlement of Government Money) |
| Defendant. | : | |

## STATEMENT OF THE OFFENSE

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, defendant ANDREW L. CARR ("CARR") agrees and stipulates as follows:

1. CARR was the owner, president, and primary employee of Citiscape Shapes, Ltd. ("Citiscape"), a corporation he ran out of his home. CARR resides at 29 Arbutus Lane, Coram, NY 11727. Citiscape generated its income primarily from sales of compact discs and related accessories (jewel cases, labels, etc.) to business and governmental purchasers.

2. The Office of Multi-Media Services in the United States Department of State's Office of Records and Publishing Services ("MMS") began purchasing compact discs and related accessories from Citiscape in or around October 2002. MMS duplicated information onto the compact disks it purchased from Citiscape and sent the discs to various State Department agencies, embassies, and outposts throughout the world. MMS is located at 2201 C Street, NW, Washington, DC 20520.

3. When MMS needed to purchase additional compact discs, an MMS employee, either Wesley Williams or Watt Young, would call CARR at his home in New York. Williams retired in or about January 2003. MMS stopped using Citiscape as a supplier in August 2004.

4. CARR would receive the orders and would ship the discs himself if he had them in stock, or, if not, have them sent directly from his suppliers. CARR would use Federal Express or United Parcel Service for shipments sent directly from Citiscape. All shipments ordered from Citiscape—whether sent from Citiscape directly or from its suppliers—were sent to MMS's shipping dock, at 2201 C Street, NW.

5. CARR and Citiscape were to be paid for the compact discs and accessories they sold to MMS through the use of governmental credit cards issued to Williams and Young. Those employees gave CARR their credit card numbers with the understanding that CARR would submit a charge only for those items shipped to MMS. CARR was not authorized to submit any charges on the governmental credit cards issued to Williams or Young for any other purpose.

6. As part of his scheme to embezzle money from the United States, CARR routinely submitted credit-card charges—and received payment for—sales of compact discs and accessories that were not ordered, sold, or shipped.

7. Between October 2002 and September 2004, CARR embezzled approximately $103,951.76 from the United States treasury by submitting false charges on the MMS employees' governmental credit cards for shipments of compact discs and accessories that had not been ordered and which were not in fact sent.

8. Between October 2002 and September 2004, CARR fraudulently appropriated $103,951.76 in government funds for his benefit and for the benefit of his spouse and family members.

9. Between October 2002 and September 2004, CARR acted knowingly and willingly with the intent to deprive the government of money. For example, during the period of August 2004 through September 2004—a period of time when MMS had stopped using Citiscape as a supplier—CARR billed approximately $34,018.98 on the government credit card of an MMS employee. Those fraudulent billings were for compact discs and accessories that were neither ordered nor delivered. Similarly, CARR billed the government for approximately $19,506.78 during the month of June 2004, approximately $19,236.00 during February 2003, and approximately $21,365.00 during March 2003, even though no shipments were sent to MMS during any of those months. CARR also continued to submit fraudulent credit-card charges on the account of Wesley Williams after Williams had retired from the State Department.

10. On or about October 3, 2005, when questioned at his home by Special Agents of the United States Department of State's Office of Inspector General, CARR falsely stated that billing discrepancies on MMS employees' governmental credit-card accounts were for amounts that should have been billed to the United States Department of Energy.

### DEFENDANT'S ACCEPTANCE

I have read every word of this Statement of Offense. Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, and after consulting with my attorney, I agree and stipulate to this Statement of Offense.

Date: 4/3/06

Andrew L. Carr
Defendant

    I have discussed this Statement of Offense with my client, Mr. Carr. I concur with his decision to stipulate to this Statement of Offense.

Date: 4/3/06

Michael J. Jannuzzi, Esquire
Counsel for Mr. Carr